IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| William P. Melton and Ann Frazier Melton, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>Medtronic, Inc., Dr. Jennifer Feldman, )<br>and Columbia Heart Clinic, P.A., d/b/a )<br>Columbia Heart and /or Columbia Heart )<br>Cardiologists, )<br>Defendants. )<br>) | Civil Docket No. 0:06-cv-01843-RBH<br><br>**ORDER**<br>**GRANTING REMAND** |

Pending before the court is the plaintiffs' motion to remand this case to the South Carolina Court of Common Pleas for the Sixth Judicial Circuit, in Fairfield County. The court has reviewed the motion, memoranda of counsel, and the record in this case. For the reasons set forth below, the court finds that remand is appropriate.

**Background Facts and Procedural History**

Plaintiffs, who are South Carolina citizens, filed this action on April 17, 2006 in the South Carolina Court of Common Pleas for the Sixth Judicial Circuit against Defendants Medtronic, Inc., a Delaware corporation with a principal place of business in Minnesota; Dr. Jennifer Feldman, a citizen of South Carolina; and the Columbia Heart Clinic, an entity incorporated in South Carolina.

The complaint alleges causes of action for negligent design and manufacture of a defibrillator device; strict liability; breach of warranty of merchantability and fitness for particular purpose; breach of express warranty; medical malpractice (negligence); negligent misrepresentation; outrage; abandonment; and loss of consortium.

1

The complaint alleges that Plaintiff William Melton underwent surgery in 2002 to implant a Medtronic defibrillator in his body. The complaint further alleges that in the early spring of 2005, Melton visited Defendant Dr. Feldman for a checkup and was given a magnet device with which to check the battery on the defibrillator. However, he was allegedly also told that checking the battery with the magnet would increase the risk that the device would fail without warning. Additionally, the complaint alleges that on or about April 7, 2005, the plaintiff received a letter advising that premature battery depletion could occur in the defibrillator. He then consulted Dr. Feldman concerning a possible surgery to replace the Medtronic device with another device. Allegedly, Melton and Feldman had a disagreement of some sort, followed by Feldman telling Melton not to call her again. Subsequently, in June of 2005, Melton's defibrillator device allegedly began to violently shock his heart and body six (6) times, although the defibrillator device is allegedly designed to not shock any person more than five (5) times in the most extreme circumstances. According to the affidavit of Ms. Janet Medin submitted by the defendant, Melton had surgery to replace the defibrillator on August 8, 2005.

The action was removed to this court on June 20, 2006 by Defendant Medtronic under 28 U.S.C. §§ 1441 and 1446. The notice of removal alleges that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The motion which is currently before the court was filed on June 27, 2006.

### **Discussion**

Initially, the court must note that the removal statute is to be strictly construed and doubts resolved in favor of remanding the case to state court. *Mulcahey v. Columbia Organic Chem. Co., Inc*, 29 F.3d 148, 151 (4th Cir. 1994); *McGraw v. FD Services, Inc.*, 811 F. Supp. 222, 223 (D.S.C.

1993).  The burden is on the defendant to show that a case was properly removed.  *Mulcahey*, 29 F.3d at 151; *Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C. 1992); *Hinks v. Associated Press*, 704 F. Supp. 638 (D.S.C. 1988).

The issue presented to the court in the plaintiffs' motion to remand is whether complete diversity exists.  The court notes that 28 U.S.C. § 1332(a) requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00).  Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side.  *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 (1978).  In the case at bar, the plaintiffs argue that this court lacks subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as complete diversity does not exist.  In support of this contention, the plaintiffs note that they named and served two (2) non-diverse defendants in this case, Dr. Feldman and the Columbia Heart Clinic.

In the response in opposition to the motion to remand, Defendant Medtronic contends that since the plaintiffs have not complied with the requirements of the newly enacted South Carolina Tort Reform Act, they cannot file a civil action against the non-diverse defendants, Dr. Feldman and the Columbia Heart Clinic.  *See* S.C. Code Ann. §15-79-125 (which requires the filing of a notice of intent to file suit and affidavit of an expert witness).  *See also* S.C. Code Ann. §15-36-100 (regarding the requirement of an affidavit of an expert witness).

Therefore, Defendant Medtronic argues that Dr. Feldman and the Columbia Heart Clinic are sham defendants who have been fraudulently joined and whose citizenship should be disregarded for the purpose of determining whether there is complete diversity.

In order to establish that a defendant has been fraudulently joined, the removing party must establish either:

> that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (emphasis in original)).

The Fourth Circuit articulated the standard for judging a complaint to determine whether a resident defendant was fraudulently joined in the case of *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422 (4th Cir. 1999):

> The party alleging fraudulent joinder bears a heavy burden - it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See, e.g.*, *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d. Cir. 1992) (inquiry into validity of complaint is more searching under Rule 12(b)(6) than when party claims fraudulent joinder.)

*Id.* at 424.

In this case, the parties agree that the provisions of the South Carolina Tort Reform Act apply to causes of action which accrue after July 1, 2005. Significantly, Defendant Medtronic argues that the plaintiffs' causes of action did not arise in this case until after July 1, 2005.[1] In support of this contention, the defendant cites *Murphy v. Owens-Corning Fiberglass Corp.*, 590 S.E.2d 479 (S.C. 2003), and argues that a negligent act is only actionable when it results in injury or damage and that Plaintiff Melton was not damaged until he underwent a second surgery, which

---

[1] Although, the defendant does not specify which causes of action it is referring to, the court presumes the defendant intended to refer to the medical malpractice causes of action.

occurred in August of 2005.  Therefore, Defendant Medtronic contends that the plaintiffs' causes of action accrued after July 1, 2005.  As such, the defendant argues that the aforementioned code sections apply to this case and because they have not been complied with, the non-diverse defendants have been fraudulently joined, and thereby, are sham defendants. Thus, the defendant contends that their citizenship should be disregarded for the purpose of determining whether there is complete diversity and therefore, whether this court has subject matter jurisdiction over this action.

The court disagrees with the defendant's position.  The *Murphy* case involved the South Carolina door-closing statute, which requires that a cause of action "arise" within South Carolina in order for a non-resident to bring suit in state court against a foreign corporation.  The South Carolina Supreme Court found that, for purposes of the door-closing statute, the plaintiff's latent disease "arose" in South Carolina.  She was a former resident of the state who was exposed to asbestos while living in the state, but she did not develop her disease resulting from the exposure until years later when she lived in another state.

This court notes that the appellate courts in South Carolina have used the verbs "arise" and "accrue" interchangeably when discussing the issue of the juncture at which the right to sue comes into existence.  *See Id.* at 482.  Nevertheless, in South Carolina, a cause of action arises or accrues "at the moment when the plaintiff has a legal right to sue on it."  *Tilley v. Pacesetter Corp.*, 585 S.E.2d 292, 297 (S.C. 2003).  "Generally, a tort action accrues when a person discovers, or in the exercise of reasonable diligence should discover, that he has been injured and that someone else proximately caused that injury."  26 *South Carolina Jurisprudence, Limitation of Actions,* § 61 (citing *Rogers v. Efird's Exterminating Co.*, 325 S.E. 2d 541 (S.C. 1985)).

In the case at bar, the plaintiffs' sixth cause of action is for "Negligence and Medical Malpractice," and it alleges negligence against all defendants in many particulars, including "in failing to install a defibrillator that a reasonably prudent physician would install . . . ." Importantly, this installation occurred in 2002, and the plaintiff learned or discovered potential problems in the spring of 2005,[2] which was before the effective date of the South Carolina Tort Reform Act. The effective date for the South Carolina Tort Reform Act is for causes of action that arise or accrue after July 1, 2005. While this lawsuit was filed after July 1, 2005 and the plaintiff underwent repair surgery in August of 2005, his claim or right to sue arose in the spring of 2005. Because of such, this court finds that the plaintiffs' causes of action accrued before the effective date of the South Carolina Tort Reform Act, July 1, 2005.

Accordingly, because it cannot be said "that there is *no possibility* that the plaintiff would be able to establish a cause of action against [Dr. Feldman and the Columbia Heart Clinic] in state court," this court finds that Defendant Medtronic has not established the non-diverse defendants were fraudulently joined. Consequently, this court finds that it lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is not complete diversity in this case.

In addition, the court will also note that the plaintiffs have alleged other causes of action against Dr. Feldman and the Columbia Heart Clinic,[3] such as outrage, that arguably do not fall

---

[2] The plaintiff alleges that he learned of the potential problem with the medical device in April of 2005 through receipt of a letter *and* that he suffered a malfunction of the defibrillator in June of 2005.

[3] Notably, the plaintiffs allege in the first factual allegation of the complaint that Dr. Feldman was acting at all times in the course and scope of her employment with Columbia Heart Clinic. Thus, every specific actionable act alleged to have been committed by Dr. Feldman is alleged to have been committed by Columbia Heart Clinic, under the doctrine of *respondeat superior*.

within the South Carolina Tort Reform Act's expert affidavit requirements. As such, valid causes of action have been stated against the non-diverse defendants and this further supports the court's finding that there has not been a sufficient showing of fraudulent joinder.

## Conclusion

For the foregoing reasons, the plaintiffs' motion to remand [Entry # 6] is **GRANTED**. Accordingly, this case is hereby **REMANDED** to the South Carolina Court of Common Pleas for the Sixth Judicial Circuit, in Fairfield County. A certified copy of this Order of remand shall be mailed by the Clerk of this Court to the Clerk of the Court of Common Pleas, Fairfield County, Sixth Judicial Circuit of South Carolina.

**IT IS SO ORDERED.**

s/R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

July 25, 2006
Florence, South Carolina